## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

IN RE:

700 TRUST,                                          CASE NO.: 24-10230-KKS
                                                    CHAPTER: 11

     Debtor.

_____/

### MEMORANDUM OPINION AND ORDER FINDING *ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE TRANSFERRED TO THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, OR DISMISSED* (ECF NO. 56) NOT SATISFIED

THIS CASE came before the Court for hearing on Wednesday, December 18, 2024, on the Court's *Order to Show Cause Why This Case Should Not Be Transferred to the Bankruptcy Court for the Middle District of Florida, or Dismissed* ("Show Cause Order," ECF No. 56). Present at the hearing were Michael Alan Gort, counsel to Debtor, Gregory B. Myers, representative and Trustee of Debtor,[1] Jason H. Egan, attorney for the United States Trustee, and Drew M. Dillworth and Glenn Burhans, Jr., counsel to Naples Property Holding Company, LLC; Naples Beach Club Land Trusts Trustee, LLC, as Trustee; Naples Beach

---

[1] 700 Trust lists Gregory B. Myers and Barbara Ann Kelly as its Trustees. *See Quitclaim Deed*, ECF No. 53-6, p. 2; *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, ECF No. 63, p. 31. The Court will refer to Mr. Myers and Ms. Kelly as "Trustees" throughout this Order.

Club Phase II and III Land Trust Trustee, LLC, as Trustee; NBC Club Owner, LLC; and Tides Note on Note Lender I, LLC ("Interested Parties").

Debtor filed no written response to the Show Cause Order. Debtor argued at the hearing that the Court did not provide enough time for Debtor to properly oppose or respond to the Show Cause Order. The Court finds this argument unpersuasive. The Court entered the Show Cause Order on December 12, 2024. By that time, the case had been pending for thirty-four (34) days. By the date of the hearing, Debtor's case had been pending for forty (40) days. None of the material facts about Debtor's principal place of business, existence, nature and location of "assets," or pending litigation have changed since Debtor filed the petition. Most, if not all, facts material to venue are a matter of public record; many of those facts have been public record for years. Whether the Court held the hearing within six (6) or sixty (60) days of the Show Cause Order, the result would have been the same.

For the reasons set forth herein, and as announced in open court at the hearing, this case is due to be transferred to the Bankruptcy Court for the Middle District of Florida, Fort Myers Division.

## Venue in this District is not proper.

Venue of bankruptcy cases is governed by 28 U.S.C. § 1408. That statute provides, in pertinent part, that a case under Title 11 may be commenced in the district where the debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for "a longer portion" of the 180 days prior to the petition date.[2] Debtor, 700 Trust, does not have a domicile, residence, principal place of business or principal assets in this district, and has not had any of same during the 180 days before it filed its Chapter 11 petition.

Debtor lists its address and principal place of business as 700 Gulf Shore Boulevard North, Naples, FL 34102, Collier County, Florida,[3] which is clearly in the Middle District of Florida. Despite its protestations to the contrary, Debtor does not own any assets in the Northern District of Florida. Although one of Debtor's Trustees, Gregory B. Myers, swore under penalty of perjury that Debtor owns real property located in this

---

[2] 28 U.S.C. § 1408(1). *See In re Blumeyer*, 224 B.R. 218, 219–20 (Bankr. M.D. Fla. 1998) ("Under this Section [1408], the court determines the proper venue by reference to facts existing during the 180 days prior to the commencement of the case to determine the district of the debtor's residence, domicile, principal place of business, or location of the person's principal assets.").

[3] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1 ("Petition"), p. 1.

district,[4] Debtor no longer owns that real property.[5]

Debtor admits its lack of ownership of these assets in the Status Report it filed the day before the hearing on the Show Cause Order.[6] There, Debtor represents that its "plan" in this case is to continue its attempts to "recover" assets previously owned by its Trustees.[7]

The asset Debtor and its Trustees are principally interested in recovering is a home in the Middle District of Florida located at 700 Gulf Shore Boulevard North, Naples, FL 34102. This is where Debtor maintains its principal place of business and apparently where Debtor's Trustees, Gregory B. Myers and Barbara Ann Kelly, have resided for many years.[8] This home was sold at a foreclosure sale on October 24,

---

[4] *See Schedule A/B: Assets — Real and Personal Property*, ECF Nos. 28 and 63; *Declaration Under Penalty of Perjury for Non-Individual Debtors,* ECF No. 33. *See also Chapter 11 Status Report*, ECF No. 66 ("Status Report"), p. 1, ¶ 3 (stating "[t]he Debtor currently has four principal assets, two of which are in the Northern District of Florida . . . ." But Debtor does not describe which two assets those are).

[5] *See, e.g., Memorandum Opinion and Final Order Granting, in Part, Interested Parties' Exigent Motion to Confirm Automatic Stay Does Not Apply to Certain Pending Matters, to Dismiss This Case for Violating Existing Filing Injunctions, and for Sanctions Against the Beneficiaries of the Debtor and Counsel (ECF No. 53) and Providing Notice to Certain Courts and Clerks*, ECF No. 90, p. 6. It appears Debtor's Trustees may never have had any interest in what Debtor lists as "undivided interest in common in 247.87 acres in The Villages at Seagrove Planned Unit Development" [sic] (the 'Seagrove PUD')." This issue has been the subject of years-long litigation.

[6] ECF No. 66.

[7] *Id.*, p. 1, ¶ 3 ("[T]he Debtor anticipates, without limitation, . . . **(ii)** *recovering* and then selling the property located adjacent to Lot 10, Block 7, Naples Golf and Beach Club Tract (i.e., 'Seventh Avenue North') . . . **(iii)** *recovering* and then selling the property located at 147 Silver Laurel Way, Santa Rosa Beach, Florida, . . . **(iv)** *recovering* and then selling the Debtor's undivided interest in common in 247.87 acres of 'open space and natural areas' in The Villages at Seagrove Planned Unit Development (the 'Seagrove PUD') . . . ." (italics added)).

[8] It is not clear whether this is where Debtor's Trustees continue to reside.

2024, before Debtor filed its Petition.[9]

Another asset Debtor's Trustees have attempted for years to recover is an interest in property located at 147 Silver Laurel Way, Santa Rosa Beach, FL 32459. Although located in the Northern District of Florida, that property was sold to Bank of America at a foreclosure sale more than seven (7) years ago, on December 8, 2017.[10]

These properties, among others, are subject to an equitable servitude imposed by another bankruptcy court in December of 2023.[11]

The use of "may" in the bankruptcy venue statute does not mean that a bankruptcy case may be commenced anywhere at all rather than in possible venues identified by statute.[12] Debtor does not meet any of the

---

[9] The Court takes judicial notice of the Amended Certificate of Sale for the Naples property, issued by the Clerk of Circuit Court, in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, on October 29, 2024. *See* Fed. R. Evid. 201(b)(2); Fed. R. Evid. 803(8)(B).

[10] The Court takes judicial notice of the Certificate of Sale for the property located at 147 Silver Laurel Way, Santa Rosa Beach, FL 32459, issued by the Clerk of Circuit Court, in the Circuit Court of the First Judicial Circuit in and for Walton County, Florida, on December 8, 2017. *See* Fed. R. Evid. 201(b)(2); Fed. R. Evid. 803(8)(B).

[11] *See In re Kelly*, 656 B.R. 541, 550–51, 608–10 (Bankr. D. Md. 2023); *Order Granting Relief from the Automatic Stay, Granting Prospective Relief for Four Years After This Order Becomes Final and Nonappealable, and Directing NBC Entities to Record Order in Land Records*, *In re Kelly*, Case No. 23-12700-MCR (Bankr. D. Md. Dec. 11, 2023), ECF No. 107; *Order Granting Relief from the Automatic Stay, Granting Prospective Relief for Four Years After This Order Becomes Final and Nonappealable, and Directing U.S. Bank to Record Order in Land Records*, *In re Kelly*, Case No. 23-12700-MCR (Bankr. D. Md. Dec. 11, 2023), ECF No. 108.

[12] *MacDonald v. Greenwood (In re MacDonald)*, 356 B.R. 416, 424 (W.D. Tenn. 2006) ("While 'may' does convey permission, it is doubtful that its use [in 28 U.S.C. § 1408] was intended to imply that a bankruptcy case may be commenced anywhere at all.").

requirements set forth in 28 U.S.C. § 1408 for venue in this district. For that reason, venue is not proper in the Northern District of Florida.

### Transfer of this case to the Middle District of Florida, Fort Myers Division, or dismissal, is proper.

The applicable change of venue statute, 28 U.S.C. § 1412, provides that a court may transfer a bankruptcy case to another district "in the interest of justice or for the convenience of the parties."[13] Bankruptcy Rule 1014(a)(2) provides that a court "may" dismiss or transfer a case filed in an improper venue.[14] Despite this permissive language in 28 U.S.C. § 1412 and Rule 1014(a)(2), the majority of courts have held that if a case is filed in the improper district, the court in which it is filed may not retain the case, but must transfer or dismiss it.[15] This majority view is based on the fact that there is no bankruptcy-specific statute applicable

---

[13] 28 U.S.C. § 1412.

[14] Fed. R. Bankr. P. 1014(a)(2) (provides: "If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.").

[15] *In re Dees*, Case No. 19-40286-KKS, 2019 WL 9406122, at *5 (Bankr. N.D. Fla. Oct. 4, 2019) ("The majority of courts, however, find that retention is not an option under the Bankruptcy Code and Rules." (citing *In re Penn-Mont Benefit Servs.*, Case No. 3:13-BK-05986-JAF, 2013 WL 6405046 (Bankr. M.D. Fla. Dec. 6, 2013))); *In re Wood*, Case No. 22-20054-drd-13, 2022 WL 2885294, at *2 (Bankr. W.D. Mo. May 25, 2022) (compiling cases). *See also In re Penn-Mont Benefit Servs.*, 2013 WL 6405046, at *9 (holding that the latest iteration of the Bankruptcy Code and Rules does not allow for retention of cases filed in an improper district; quoting the Advisory Committee's explanation of changes to Rule 1014, the court noted "[t]he rule is amended to delete the reference to retention of a case commenced in the improper district.").

to improperly venued cases, so Section 1406 of Title 28 must apply.[16] Section 1406 of Title 28 provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[17]

Even under the minority view that 28 U.S.C. § 1412 would permit the Court to retain this case, transfer of the case remains the appropriate remedy. "[U]nder 28 U.S.C. § 1412, a court may transfer a bankruptcy case to another district 'in the interest of justice or for the convenience of the parties.'"[18] The "interest of justice or for the convenience of the parties" language in 28 U.S.C. § 1412 is disjunctive, so satisfying either prong is sufficient to support a transfer of venue.[19]

Courts consider the following factors with respect to the "convenience of the parties": (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the necessary witnesses; (4) the location of assets; (5) the economic

---

[16] *In re Wood*, 2022 WL 2885294, at *2.

[17] 28 U.S.C. § 1406(a).

[18] *Ford v. State Dep't of Revenue (In re Ford)*, 685 F. Supp. 3d 1333, 1337 (M.D. Fla. 2023) (citing *In re Townsend*, 84 B.R. 764, 768 (Bankr. N.D. Fla. 1988)); *In re Penn-Mont Benefit Servs.*, 2013 WL 6405046, at *10–11.

[19] *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008).

administration of the estate; (6) relative advantages and obstacles to a fair trial; (7) economic harm to the debtor; and (8) the inability of a party to defend in the new forum.[20]

The "interest of justice" standard is broad and flexible.[21] In determining whether to transfer a case under § 1412 "in the interest of justice," courts consider myriad factors including: (1) whether transfer promotes the economic and efficient administration of the bankruptcy estate; (2) whether transfer facilitates judicial economy; (3) the parties' ability to receive a fair trial in either venue; (4) whether either forum has an interest in deciding controversies within its jurisdictional borders, by those familiar with its laws; (5) whether transfer would affect the enforceability of any judgment rendered; and (6) the presumption in favor of the "home court" and whether the debtor's original choice of forum should be disturbed.[22] Not all of the "interest of justice" factors are weighted equally. The key consideration is "whether transferring venue

---

[20] *Meininger v. Euram, LLC (In re Land Res., LLC)*, Case No. 6:08-bk-10159-ABB, Adv. No. 6:10-ap-273-JAF, 2011 WL 13389606, at *3 (Bankr. M.D. Fla. Aug. 10, 2011) (citing *Burlingame v. Whilden (In re Whilden)*, 67 B.R. 40, 42 (M.D. Fla. 1986); *In re Ford*, 191 B.R. 233, 238 (Bankr. M.D. Fla. 1995)). *See also In re Dunmore Homes, Inc.*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008).

[21] *In re Penn-Mont Benefit Servs.*, 2013 WL 6405046, at *10 (citing *In re Blumeyer*, 224 B.R. 218, 220 (Bankr. M.D. Fla. 1998)).

[22] *In re Bestwall LLC*, 605 B.R. 43, 51 (Bankr. W.D.N.C. 2019); *see also Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 974 n.26 (11th Cir. 2012); *In re Dunmore Homes, Inc.*, 380 B.R. at 671–72.

would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness."[23]

The instant case meets virtually every factor related to convenience of the parties and the interest of justice. Without question, transferring venue to the Middle District of Florida will facilitate judicial economy, provide all parties the ability to receive a fair trial, and provide the Middle District of Florida the ability to continue deciding controversies within its jurisdictional borders. Debtor's Trustees' litigation history related to the "assets" Debtor is attempting to recover demonstrates that transferring venue would also promote timeliness and fairness. Before Debtor filed the instant case, all cases involving Debtor's Trustees and the Interested Parties have been in state and federal courts outside the Northern District of Florida.

The other factor—the efficient administration of the bankruptcy estate—is best handled in the Middle District of Florida because of that court's familiarity with the parties (other than 700 Trust, which is new) and issues presented by this case.

---

[23] *In re Bestwall LLC*, 605 B.R. at 51 (citing *Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)); *In re Penn-Mont Benefit Servs.*, 2013 WL 6405046, at *10 (citing *In re Blumeyer*, 224 at 220).

Debtor's filing of this case in this district is the most recent chapter in a long tale of delay, obfuscation, and abuse of federal and state judicial systems. This case is also a quintessential textbook example of improper forum shopping.[24] Obvious forum shopping adds weight to the other considerations favoring transfer to another district.[25]

Debtor's urging that this case belongs in this district is simply wrong. In other words, that dog just won't hunt. It appears highly likely Debtor has nothing to administer in this case. All of the litigation Debtor's Trustees have been involved in over the past many years has been in other districts and has involved parties Debtor now lists as its own creditors. Debtor was formed the same day it filed the Petition commencing this case. Since then, Debtor's energy and efforts have centered almost exclusively on attempting to redirect pending litigation to the Northern District of Florida.[26] The docket in this case readily

---

[24] Forum shopping is historically disfavored by the federal courts. *Hanna v. Plumer*, 380 U.S. 460, 468–70 (1965). Forum shopping has also been referred to as forum manipulation. *See, e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

[25] *Scheinbart v. Certain-Teed Products, Corp.*, 367 F. Supp. 707, 711–12 (S.D.N.Y. 1973). *See also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654–55 (11th Cir. 1993) (finding district court did not abuse its discretion by transferring case to Middle District of Georgia).

[26] For example, three (3) days before forming Debtor and causing it to file this case, Gregory B. Myers attempted to remove the Circuit Court case involving property in the Middle District of Florida to the federal district court. *Notice of Filing of Notice of Removal*, *Myers v. Naples Golf and Beach Club, Inc.*, Case No. 2021-CA-001441-0001 (Fla. 20th Cir. Ct. Nov. 5, 2024), Doc. No. 594. A few days later the district court remanded the case to the Collier County Circuit Court and authorized the opposing party to seek attorney fees and costs

reflects that Debtor has made no real effort toward reorganizing.

That Debtor's Trustees caused this case to be filed in this district to assist their efforts to avoid prior adverse rulings by two bankruptcy courts, specifically including the Bankruptcy Court for the Middle District of Florida, is patently obvious. Put simply,  the "facts" Debtor presents in support of its contention that venue is proper in this district is purely an illusion made up of smoke and mirrors.

A debtor's forum shopping will not be condoned. "Setting up a company with the sole intent of filing bankruptcy in a certain district cannot be 'the thing which the [venue] statute intended.'"[27] To permit Debtor to circumvent the rulings of other bankruptcy courts by maintaining this case in this district would license Debtor and its Trustees to circumvent the judicial process by picking the court they think will give them the best result.[28]

This Court may properly use its discretion to transfer a bankruptcy

---

against Myers. *Order [of Remand], Myers v. Naples Golf and Beach Club, Inc.*, Case No. 2021-CA-001441-0001 (Fla. 20th Cir. Ct. Nov. 14, 2024), Doc. No. 597. *See also Motion for Transfer of Venue to the United States District Court for the Northern District of Florida to be Automatically Referred to the United States Bankruptcy Court for the Northern District of Florida*, *US Bank Nat'l Ass'n v. Kelly*, Case No. 2:24-cv-01086-JES-KCD (M.D. Fla. Dec. 13, 2024), ECF No. 23, p. 1.

[27] *In re LTL Mgmt. LLC*, No. 21-30589, 2021 WL 5343945, at *6 (Bankr. W.D.N.C. Nov. 16, 2021) (quoting *In re Patriot Coal Corp.*, 482 B.R. 718, 745 (Bankr. S.D.N.Y. 2012)).

[28] *In re Steeley*, 243 B.R. 421 (N.D. Ala. 1999).

case to another district in the interest of justice and for the convenience of the parties where, as here, the other court has already adjudicated a prior bankruptcy case involving similar facts.[29]

## Conclusion

There can be no question that this case does not belong in this Court. The interest of justice, in particular, is best served by transferring this case to the Bankruptcy Court for the Middle District of Florida, Fort Myers Division. To permit this case to remain in this district would result in a travesty to the Interested Parties and a waste of judicial resources. Worse, permitting this case to remain in this district would facilitate Debtor's, its Trustees', and its counsel's continued, well-demonstrated mockery of and disdain for the entire judicial system.

For the reasons stated, it is

ORDERED:

1. The *Order to Show Cause Why This Case Should Not Be Transferred to the Bankruptcy Court for the Middle District of Florida, or Dismissed* (ECF No. 56) is NOT SATISFIED.

2. The Court will enter a separate order directing the Clerk is to

---

[29] *Ford v. State Dep't of Revenue (In re Ford)*, 685 F. Supp. 3d at 1337.

immediately transfer this case to the United States Bankruptcy

Court for the Middle District of Florida, Fort Myers Division.

DONE and ORDERED on ___January 10, 2025_____.


KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

cc: All parties in interest.

13